IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| WILLIAM KIBBEY STOVALL, § § Plaintiff § § v. § § RAYTHEON COMPANY, a/k/a § RAYTHEON TECHNOLOGIES, § § Defendant. § § | Civil Action No. 4:23-cv-00629-ALM |

## RAYTHEON COMPANY'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendant Raytheon Company[1] ("Raytheon") files this Motion for Summary Judgment and Brief in Support seeking dismissal of Plaintiff William Kibbey Stovall's Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure and LR 7.[2]

### I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Stovall is a former Raytheon employee who purports to assert claims for age discrimination and retaliation against Raytheon under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* ("ADEA") and Chapter 21 of the Texas Labor Code, §§ 21.001, *et seq.* ("Chapter 21"). Stovall's coextensive age discrimination claims are subject to summary judgment for multiple reasons. First, Stovall admits that he engaged in the misconduct that resulted in his termination from employment. With this critical admission, Stovall cannot, as a matter of law,

---

[1]     Raytheon Company is not "also known as" Raytheon Technologies. Raytheon Technologies, now RTX Corporation, is the parent company of Raytheon Company and is not a proper party to this litigation. Plaintiff was employed by Raytheon Company.

[2]     Raytheon has pending a Proposed Motion for Extension of the Dispositive Motion Deadline seeking an extension due to the need for additional discovery, including Stovall's deposition, for which Stovall's counsel failed to provide dates prior to the deadline. Raytheon reserves the right to amend this Motion for Summary Judgment once it has obtained Stovall's deposition and received Stovall's written discovery responses.

establish his *prima facie* burden to show he was qualified for his position with Raytheon or that Raytheon's legitimate, non-discriminatory reason for termination was pretextual. Second, Stovall has not and cannot demonstrate that employees outside his protected class were treated more favorably under nearly identical circumstances. Accordingly, summary judgment is warranted, and Stovall's age discrimination claims should be dismissed with prejudice.

Stovall's retaliation claims fare no better. First, Stovall failed to exhaust his administrative remedies for retaliation, which is fatal to his claims. Second, it is undisputed that Stovall did not engage in any protected conduct prior to his separation. Indeed, he did not even plead protected conduct in his Complaint. For these reasons, summary judgment is also warranted on his retaliation claims as a matter of law.

## II. STATEMENT OF ISSUES

**Issue No. 1:** Whether Stovall can establish a *prima facie* case of age discrimination when he cannot show he was meeting Raytheon's legitimate performance expectations when he admits to the misconduct that resulted in his termination.

**Issue No. 2:** Whether Stovall can establish a *prima facie* case of age discrimination when he cannot point to any similarly-situated employee outside of his protected class who engaged in the same misconduct and was not terminated.

**Issue No. 3:** Whether Stovall can prevail on his discrimination/retaliation claim when Raytheon has presented a legitimate, non-discriminatory reason for its termination decision and Stovall has no evidence Raytheon's decision was a pretext for discrimination.

**Issue No. 4:** Whether Stovall can maintain a retaliation claim when he did not exhaust a retaliation claim in his Charge. Exhaustion of all claims with either the Equal Employment Opportunity Commission ("EEOC") or Texas Workforce Commission ("TWC") prior to filing suit is mandatory.

**Issue No. 5:** Whether Stovall can sustain a retaliation claim when he did not complain of age discrimination until after his termination from employment.

### III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.  Raytheon's Business Operations and Relevant Policies.**

Raytheon Company, a subsidiary of RTX Corporation, develops advanced sensors, training, and cyber and software solutions that provide a decisive advantage to civil, military, and commercial customers in more than 46 countries around the world. (Declaration of Brandon Yamauchi ("Yamauchi Decl."), ¶2, attached hereto as Exhibit A).

Raytheon is committed to providing equal employment opportunities for all employees and maintaining a work environment free from any kind of unlawful discrimination or retaliation. To that end, Raytheon currently maintains and maintained during the time relevant to this matter equal employment opportunity and anti-harassment policies, which prohibit discrimination and harassment on the basis of age or any other protected characteristic. (Declaration of Mina Okafor ("Okafor Decl."), ¶3, attached hereto as Exhibit B; Equal Employment Opportunity Policy/Affirmative Action Policy, Ex. B-1; Discrimination & Harassment Prevention Policy, Ex. B-2). Pursuant to these policies, the Company's employees have numerous channels for reporting complaints or concerns about any alleged discrimination, retaliation, or harassment, including their supervisor, a Human Resources representative, or Raytheon's Ombudsman office. (*Id.*)

All employees receive training on these policies, are given policy statements, and are directed to online resources regarding the same. Plaintiff Kibbey Stovall ("Stovall") completed training on these policies most recently through a program entitled Professional Behavior: Mutual Respect on September 21, 2021. (Okafor Decl., ¶4, Ex. B; Training Records, Ex. B-3).

### B. Plaintiff's Employment with Raytheon.

Raytheon employed Stovall as an engineer at its facility in McKinney, Texas, reporting to Section Manager, Kelly Lucy ("Lucy") and then Associate Director, General Engineering, Brandon Yamauchi. (Complaint, ¶¶6-7, Doc. 1; Yamauchi Decl., ¶¶3-4, Ex. A).

### C. April 2022 Complaint Against Stovall.

On April 1, 2022, Stovall used his cafeteria tray to "tap" (*i.e.* touch) the buttocks of a male co-worker that Stovall describes as "openly gay." (Complaint, ¶8, Doc. 1), acknowledged that his conduct was harassing, but told the employee it was okay because they were "good friends". Immediately after the incident, the coworker in question, Garrett Gruss ("Gruss") emailed Stovall, copying Lucy and Yamauchi, describing the incident and stating:

> Kibbey…At 12:28 today, you smacked my butt in the cafeteria, joking about how sexually harassing me was okay because we are "good friends." This incident was inappropriate, against Raytheon policy, and disgusting. For the sake of the company, the people you work with, and your own career, I hope a future incident like this does not happen.

(Yamauchi Decl., ¶ 5, Ex. A; April 1, 2022 Email Chain, Ex. A-1).

### D. Yamauchi's Investigation.

After reviewing the email, Yamauchi immediately contacted Gruss to discuss the incident. In that conversation, Gruss confirmed the "butt smack" and stated that when he turned around Stovall was laughing at him, and that when he told Stovall his behavior was inappropriate, Stovall continued to laugh at him. Gruss additionally told Yamauchi that his co-worker Bianca Avila ("Avila") witnessed the incident and also told Stovall his behavior was inappropriate, to which Stovall said, "I can't do that to you because you're a girl and it would be sexual harassment, but I can do that to Garrett because we're good friends." (Yamauchi Decl., ¶6, Ex. A). After speaking

4

with Gruss, Yamauchi contacted Avila who confirmed Gruss' account of events. (Yamauchi Decl., ¶7, Ex. A).

Yamauchi then spoke with Stovall. In their conversation, Stovall admitted to hitting Gruss on the buttocks with a cafeteria tray and to making the comment about not being able to do so to Avila because it is "sexual harassment," but being able to do so to Gruss because they were "good friends." Stovall told Yamauchi that he did not understand why Gruss was "taking [it] so seriously" because "it was a joke." (Yamauchi Decl., ¶8, Ex. A). Yamauchi thought Stovall's response was troubling because he was clearly not grasping that his behavior was inappropriate in the workplace, whether the target of his conduct was female or male. (*Id*.)

Following his conversation with Stovall, Yamauchi went to Raytheon Human Resources ("HR") to report the incident so that Employee Relations ("ER") could begin its own investigation into the incident. (Yamauchi Decl., ¶9, Ex. A).

After Yamauchi's conversation with Stovall, Stovall responded to Gruss' initial email stating:

> I am glad you brought this to my attention. I had tapped you with my cafeteria tray to get your attention and say a friendly "hello." Nothing sexual was intended. That you have taken it to be offensive greatly upsets me and you have my sincerest apologies for the unintended consequences of my actions. I will treat your personal space with a higher level of respect in the future.
>
> Brandon Yamauchi was kind enough to immediately seek me out to talk about this and I hope if you speak to him again he will also convey to you my feelings on this matter.
>
> Again, you have my apologies.

(Yamauchi Decl., ¶10, Ex. A; April 1, 2022 Email Chain, Ex. A-1).

Gruss responded stating that Stovall had a history of inappropriate and disrespectful conduct towards him. As an example, Gruss stated that in Q4 of 2020, Stovall "grouped [Gruss']

5

chest, mimicking massaging a pair of breasts, while saying 'sooooooft.'" (Yamauchi Decl., ¶11, Ex. A; April 1, 2022 Email Chain, Ex. A-1).

Stovall responded to Gruss not denying that incident, but stating:

Again, nothing I have ever I [sic]done towards you was ever intended as sexual, let alone harassment. And I am still mortified that I did not recognize your level of discomfort; I wish you would have spoken to me sooner so I could have recognized how it was making you feel. Again, I am truly sorry and I repeat my promise to treat you purely as a professional co-worker henceforth.

(Yamauchi Decl., ¶12, Ex. A; April 1, 2022 Email Chain, Ex. A-1).

### E. Employee Relations' Investigation.

On April 4, 2022, Matt Bauer ("Bauer"), Senior Manager, Human Resources Partner, notified Mina Okafor ("Okafor"), Manager, Employee & Labor Relations, about Gruss' complaint against Stovall so that Okafor could investigate. (Okafor Decl., ¶5, Ex. B; Investigation Report, Ex. B-4).

Okafor began her investigation on April 5, 2022, by first interviewing Gruss. In the interview, Gruss described Stovall as "offensive, inappropriate, and unprofessional." Gruss told Okafor about the incident in the cafeteria on April 1, 2022, and stated that when he turned around after being hit Stovall was laughing at him, and that when he told Stovall his behavior was inappropriate, Stovall continued to laugh at him. Gruss additionally told Okafor that Avila (who witnessed the incident) immediately told Stovall his behavior was inappropriate, to which Stovall said, "I can't do that to you because you're a girl and it would be sexual harassment, but I can do that to Garrett because we're good friends." Gruss denied he and Stovall are friends. (Okafor Decl., ¶6, Ex. B; Investigation Report, Ex. B-4).

Gruss further told Okafor about the incident in November 2020. Gruss stated that he and Stovall were working in the process lab with polyurethane and Stovall commented that the material

6

was extremely soft. Stovall then stood up and placed both his hands on Gruss' chest, began massaging, and said "soft." (Okafor Decl., ¶7, Ex. B; Investigation Report, Ex. B-4).

Okafor also spoke with Yamauchi on April 5, 2022. Yamauchi described Stovall as "a little old school, in that he tends to joke around a fair amount," but denied ever seeing Stovall "cross the line" with his jokes in front of him. (Okafor Decl., ¶8, Ex. B; Investigation Report, Ex. B-4).

On April 6, 2022, Okafor spoke with Avila, who described Stovall as "rude, inappropriate, lazy, and impulsive" because "he does not think before making inappropriate comments" at work. Avila characterized Stovall's behavior at work as "wildly inappropriate" and also mentioned he had made multiple inappropriate comments to her. For example, she told Okafor about shooting a promotional video with Stovall and mentioning that the video seemed like a reality show, to which Stovall responded, "the only thing that will make this more dramatic is if you sleep with half the group." Additionally, Avila told Okafor that Stovall frequently made comments about her hair, physique and general appearance which made her feel uncomfortable. While she could not remember all the comments, she did remember an instance in which Stovall said she dressed the way she did "for attention." Avila stated that she had told Stovall on multiple occasions that she thought his behavior was inappropriate, but he did not take her seriously and brushed off her objections. In addition to these allegations, Avila confirmed Gruss' account of events in the cafeteria. (Okafor Decl., ¶9, Ex. B; Investigation Report, Ex. B-4).

The next day, Okafor spoke with Engineer Justin Musgrove ("Musgrove") and Lucy. Musgrove described Stovall's interactions with other employees as "sometimes unprofessional" and crossing the line. On one occasion, Stovall called a female engineer "darling," and that female engineer let Musgrove know what the behavior. Musgrove was also aware of the comments Stovall made to Avila regarding her appearance and that Stovall said she dresses for "attention." Notably,

Musgrove stated it was common for Stovall to make jokes or comments that were inappropriate and that each time they called out his behavior, he would apologize, but repeat the same behavior shortly thereafter. (Okafor Decl., ¶10, Ex. B; Investigation Report, Ex. B-4).

Lucy described Stovall as having a condescending attitude toward his peers and that this attitude and his jokes come across unprofessional. However, Lucy noted that Stovall seems unaware that his behavior is unprofessional despite coaching. (Okafor Decl., ¶11, Ex. B; Investigation Report, Ex. B-4).

On April 11, 2022, in the course of the investigation, another employee, Pete Amadon ("Amadon"), Manager, Manufacturing – Ops submitted a complaint through the Ethics Webline regarding Stovall's behavior in the workplace. Amadon reported that Stovall's "humor comes off as harassment" and "has made others feel uncomfortable." Amadon indicated that Stovall made a comment in the workplace regarding new female employees, "They only hire hot chicks." Amadon further stated "Mr. Stovall's behavior [was] affecting the work of others." (Okafor Decl., ¶12, Ex. B; Investigation Report, Ex. B-4).

Finally, on April 12, 2022, Okafor interviewed Stovall. Stovall described his interactions with his coworkers as "humorous" and said he worked well with others though he does not always deal with his job "with absolute seriousness and a straight face." Stovall explained he makes jokes at work to make other employees "feel comfortable" at work. He admitted that while he tries to balance his humor "based on his audience," he sometimes had "unintentionally offended others with his jokes." (Okafor Decl., ¶13, Ex. B; Investigation Report, Ex. B-4).

With regard to the April 1st incident, Stovall admitted to "smacking" Gruss on the buttocks, saying he could do so because he and Gruss were "good friends," and saying he couldn't do so to a woman because it would be considered sexual harassment. Stovall stated he did not think that

smacking Gruss was inappropriate or offensive because he is a "young man." (Okafor Decl., ¶14, Ex. B; Investigation Report, Ex. B-4).

With regard to the chest rubbing allegations, Stovall admitted he had "patted" Gruss' chest when Gruss wore a heavily patted apron to work in the lab, but thought he said "oooo nice." (Okafor Decl., ¶15, Ex. B; Investigation Report, Ex. B-4).

Stovall further admitted to commenting on the appearance of his female coworkers. Specifically, he admitted to calling Avila "hot," telling her she was very attractive, and telling her to "use what she's got." Stovall denied making general comments about the dress of his female coworkers, but admitted to calling Deepali Patel, "Lovely Deepali" until she told him to stop. Stovall explained he regularly made comments to female employees about their appearance because he thought he was giving them complaints so they would feel comfortable and confident "when they go home to their husbands." (Okafor Decl., ¶16, Ex. B; Investigation Report, Ex. B-4).

At the conclusion of Okafor's interview with Stovall, he stated that he was "upset" that Gruss did not inform him in person that he thought his behavior was inappropriate or offensive. He further stated that the "butt smack was minor" and Gruss' reaction was "overboard, overblown, and overkill." Stovall concluded the interview stating he "just didn't understand how this was inappropriate or offensive." (Okafor Decl., ¶17, Ex. B; Investigation Report, Ex. B-4).

**F. Okafor's Investigation Conclusions.**

After completing her investigation, Okafor concluded that Stovall engaged in disrespectful and inappropriate conduct towards Gruss and others in the workplace. The investigation supported that Stovall publicly humiliated Gruss in the workplace when he deliberately hit Gruss on the buttocks with a lunch tray. Stovall admitted to this behavior. Even when Gruss and Avila

9

questioned his behavior, Stovall was dismissive and simply laughed. This was a deliberate unwanted physical touching towards Gruss without his consent. Stovall's behavior was at odds with Raytheon's values of respect. (Okafor Decl., ¶18, Ex. B; Investigation Report, Ex. B-4).

In addition to the cafeteria incident, Okafor's investigation supported that Stovall engaged in other conduct of a sexual nature that was offensive and inappropriate in the workplace. Specifically, Stovall admitted to massaging Gruss' chest while making a sexualized comment. (Okafor Decl., ¶19, Ex. B; Investigation Report, Ex. B-4).

Okafor noted in her conclusion that, although Stovall apologized to Gruss for his conduct, Stovall was cavalier about his behavior and the impact towards Gruss. Stovall did not appear to understand the seriousness of his behavior or show remorse for his behavior. When asked during his interview if had any additional statement regarding Gruss' allegations, Stovall stated he was "upset" that Gruss did not inform him in person that he thought Stovall's behavior was inappropriate or offensive. Stovall adamantly argued the "butt smack was minor" and Gruss' reaction was "overboard, overblown and overkill." Stovall further stated that he "just didn't understand how this was inappropriate or offensive." (Okafor Decl., ¶20, Investigation Report, Ex. B-4).

Okafor's Investigation further corroborated an ongoing pattern of Stovall engaging in inappropriate and offensive conduct towards others, not just Gruss, which included the admitted commenting on the appearance of female coworkers. (Okafor Decl., ¶21, Investigation Report, Ex. B-4).

Okafor concluded that her Investigation findings supported that Stovall's actions constituted unprofessional and disrespectful conduct in violation of Raytheon's Discrimination

and Harassment Prevention Policy (PCP-31, dated January 11, 2021). (Okafor Decl., ¶22, Ex. B; Investigation Report, Ex. B-4).

### G. Stovall's Termination.

Okafor provided her Investigation Report to Bauer for Bauer and Stovall's management to determine appropriate disciplinary action for his behavior. (Okafor Decl., ¶22, Ex. B). To that end, Bauer shared the Investigation Report with Yamauchi. (Yamauchi Decl., ¶13, Ex. A). Upon reviewing the Investigation Report, Yamauchi was very troubled by Stovall's interview – not only Stovall's admissions, but his lack of awareness that his behavior was problematic. (Yamauchi Decl., ¶16, Ex. A).

Bauer and Yamauchi discussed the Investigation findings and were particularly concerned that Stovall did not seem to understand or appreciate that his behavior was inappropriate in the workplace. This concern was underscored by Stovall's statement to the Investigator that he "just didn't understand how this was inappropriate or offensive." This statement, paired with witnesses reporting numerous and repeated attempts to advise Stovall of his offensive behavior which he ignored or brushed off, led Yamauchi and Bauer to agree that there was increased risk of repeat offenses because Stovall did not seem cognizant of the line between respectful and offensive workplace conduct. Based on these concerns and the confirmed disrespectful and unprofessional behavior, Yamauchi determined termination was the appropriate course of action, and Bauer concurred. (Yamauchi Decl., ¶17, Ex. A).

Yamauchi notified Stovall of his termination from employment on or about May 19, 2022. (Yamauchi Decl., ¶18, Ex. A).

Following his separation, Stovall was not replaced at the McKinney, Texas facility. Rather, Stovall's duties were absorbed by existing team members. (Declaration of Kelly Lucy, ("Lucy Decl."), ¶4, attached hereto as Exhibit C).

At no time prior to his separation did Stovall make any complaint of discrimination to Raytheon. (Okafor Decl., ¶24, Ex. B). Moreover, Stovall's Complaint contains no allegation of protected conduct. (Complaint, Doc. 1). Additionally, Stovall's Charge of Discrimination contains no allegation of retaliation. (Charge of Discrimination, attached hereto as Exhibit D).

**H. Plaintiff's Admissions.**

Stovall admits the following key facts as set forth in his Complaint:

- On April 1, 2022, Stovall used his cafeteria tray to "tap" (*i.e.* touch) the buttocks of a male co-worker that Stovall describes as "openly gay." (Complaint, ¶8, Doc. 1)

- That while he thought his actions were a "friendly hello," his coworker thought differently and accused him of sexual harassment. (Complaint, ¶8, Doc. 1)

- Raytheon investigated the allegations and interviewed several Raytheon employees, including Stovall. (Complaint, ¶¶8 and 11, Doc. 1).

- In the course of Raytheon's investigation, additional allegations of inappropriate conduct by Stovall came to light. (Complaint, ¶11, Doc. 1)

- Stovall's position was not replaced. (Complaint, ¶14, Doc. 1).

**I. Plaintiff's Allegations of Age Discrimination.**

Stovall's claim for age discrimination is based solely on the following "factual" allegations in his Complaint (Doc. 1) and his related contention that younger co-workers were treated more favorably:

- Plaintiff "noticed that [Brandon Yamauchi] had ageist characteristics and appeared to favor younger workers while having a difficult time dealing with older workers." (Complaint, ¶7, Doc. 1).

- "The Department manager and Defendant consistently treated younger workers more favorably than older workers." The example provided claimed Lucy (not Yamauchi who

- "evaluated" him in the investigation) was protective of a "young" tech and assigned the tech engineering tasks. (Complaint, ¶13, Doc. 1).

- "The Department and Section managers favored the younger workers when issues arose concerning their behavior, when assignments were being given or when credit for good work was being given." (Complaint, ¶13, Doc. 1).

- Plaintiff's "position was not replaced in its entirety but divided into multiple individual tasks with some tasks assigned to existing younger co-workers, some assigned to a new younger female staff person and some high-level, specialized functions no longer being conducted by the department." (Complaint, ¶14, Doc. 1).

## IV.    LEGAL STANDARD

Raytheon is entitled to summary judgment upon showing that "there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a); *Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 880 (5th Cir. 2014). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Hillman v. Loga,* 697 F.3d 299, 302 (5th Cir. 2012).

## V.    ARGUMENT

### A. Stovall Cannot Establish a *Prima Facie* Case of Age Discrimination.

1. Stovall cannot establish a *prima facie* case of age discrimination.

To establish a *prima facie* case of age discrimination under the ADEA and Chapter 21, the plaintiff must establish that he (1) was a member of the protected class, (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone younger or (b) otherwise treated less favorably than others who were similarly situated but younger. *See e.g. Ross v. Judson Indep. Sch. Dist.,* 993 F.3d 315, 321–22 (5th Cir. 2021) *(quoting Texas Tech Univ. Health Scis. Ctr.-El Paso v. Flores,* 612 S.W.3d 299, 305 (Tex. 2020)) (affirming summary judgment on age discrimination claim where the plaintiff failed to establish

13

similarly situated employees were treated more favorably and where it was her numerous policy violations were clearly not a pretext for age discrimination).

As an initial matter, Stovall admits that he engaged in the inappropriate conduct (buttock "tap") that led to the investigation and ultimately his separation for violation of Raytheon's Discrimination and Harassment Prevention Policy. Consequently, as a matter of law, Stovall cannot prove that he was behaviorally qualified for his position at Raytheon. Although Stovall in his Complaint tries to justify his poor behavior and discredit/disparage his accusers, he admits to engaging in the behavior that made many of his coworker uncomfortable and which violated Raytheon policy—behavior that (even today) he cannot acknowledge was inappropriate in the workplace. While Stovall clearly disagrees with Raytheon's actions in response to his inappropriate behavior, his disagreement is not and cannot be evidence of age discrimination or a pretext for discrimination. *See e.g. McMichael v. Transocean Offshore Deepwater Drilling, Inc.,* 934 F.3d 447, 460 (5th Cir. 2019) (noting mere disagreement with an employer's application of its policy is not evidence of either discrimination or pretext). Since Stovall is unable to show he is qualified for his position due to his admitted misconduct, he cannot ultimately meet his *prima facie* burden summary judgment should be granted on his age discrimination claims under the ADEA and Chapter 21.

Even if Stovall could establish that he was qualified for his position with Raytheon, he cannot establish the final element of his *prima facie* case—replacement or that he endured less favorable treatment than similarly situated, younger employees. Stovall admits that he was not replaced. Indeed, while he notes that some of his non-essential or tangential tasks were divided among other unidentified, but allegedly younger employees, he admits that the high-level, specialized and essential functions he performed were no longer being conducted by his former

department. (Complaint, ¶14, Doc. 1.) These include the very type of functions for which Stovall claims Raytheon recruited him. (*Id.* at ¶¶6-7). It is well settled in the Fifth Circuit that "An employee has not been replaced when his former duties are distributed among other co-workers. *See e.g. Ernst v. Methodist Hosp. Sys.,* 1 F.4th 333, 339 (5th Cir. 2021); *see also Martin v. Bayland*, 403 F. Supp. 2d 578, 583 (S.D. Tex. 2005), *aff'd*, 181 Fed.Appx. 422 (5th Cir. 2006) (same); *Ellini v. Ameriprise*, 881 F. Supp. 2d 813, 820-21 (S.D. Tex. 2012) (compiling cases that reassignment of job duties is not replacement).

Because Stovall was not replaced, he may only evade summary judgment by alleging facts showing he was treated less favorably than similarly situated younger employees. He has not and cannot do so. First, Stovall's statement in Paragraph 7 of the Complaint that he "noticed that [Yamauchi] had ageist characteristics and appeared to favor younger workers while having a difficult time dealing with older workers," is nothing more than a conclusory allegation unsupported by any fact. Likewise, Stovall's mere assertion that Yamauchi "consistently treated younger workers more favorably than older workers" is conclusory and does not explain **_how_** Yamauchi treated any younger workers more favorably under the same or similar circumstances. Indeed, the only specific facts provided in the Complaint regarding treatment of other employees specifically pertain to Lucy's actions, not Yamauchi. Lucy was not a decisionmaker in his termination.

Stovall's final allegation pertaining to alleged disparate treatment based on his age states: "The Department and Section managers favored the younger workers when issues arose concerning their behavior, when assignments were being given or when credit for good work was being given." Again, there is a notable lack of actual facts and details supporting this conclusory assertion. But, more importantly, there is no evidence showing that a younger, similarly situated

employee engaged in similar misconduct as Stovall, that was investigated and corroborated, and was **_not_** terminated. The Fifth Circuit is clear that in discrimination cases, plaintiff must show that employees outside protected class were treated more favorably under **_nearly identical_** circumstances. *See e.g. Earle v. Aramark Corp.*, 247 F. App'x 519, 523 (5th Cir. 2007) (citing *Perez v. Tex. Dep't of Criminal Justice, Inst. Div.*, 395 F.3d 206, 213 (5th Cir. 2004), cert. denied, 546 U.S. 976 (2005). Critically, it is the plaintiff's conduct that drew the adverse employment decision at issue that must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253 (5th Cir. 2009). Here, Stovall's inclusion of allegations of favorable treatment in things like work assignments and being given "credit," but no evidence of disparate discipline for similar investigated misconduct indicates that Stovall cannot do so. Because Stovall has not and cannot meet his obligation to show Yamauchi treated any younger workers more favorably under the same or similar circumstances, his ADEA and Chapter 21 age discrimination claims should be dismissed as a matter of law.

    2. <u>Plaintiff cannot establish pretext.</u>

Even if Stovall could support a *prima facie* case of age discrimination (he cannot), his admitted misconduct precludes a showing of pretext. Raytheon terminated Stovall's employment for the legitimate, non-discriminatory reason that Stovall engaged in admitted disrespectful and unprofessional behavior that violated Raytheon policy. There is no dispute that Stovall engaged in that conduct. Thus, he cannot establish pretext. *See e.g. Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 225 (5th Cir. 2001) ("In light of . . . [plaintiff's] repeated admissions to the acts that were the basis for her termination . . . [plaintiff's] generalized opinion that she was subject to disparate treatment does not demonstrate pretext."); *Molina v. Equistar Chems., L.P.*, Civil Action No. C-

05-327, 2006 WL 1851834, *8 (S.D. Tex. June 30, 2006) (where plaintiff admitted engaging in the conduct that resulted in his termination, plaintiff could not show that the employer's non-discriminatory reasons were false); *Rabago v. Univ. of Tex. Med. Branch*, No. Civ.A. G-04-141, 2005 WL 3078653, *4 (S.D. Tex. November 15, 2005) (same). Again, Stovall's mere disagreement with the consequences stemming from those actions is insufficient to establish pretext. *See e.g. Campbell v. Zayo Grp., L.L.C.*, 656 F. Appx. 711, 715 (5th Cir. 2016) (per curiam) (unpublished) (holding that "mere disagreement" with the employer's application of policy, without more, does not provide sufficient evidence of pretext); *Khalfani v. Balfour Beatty Communities, LLC*, No. EP-12-CV-000422-DCG, 2014 WL 12530942, at *3 (W.D. Tex. Mar. 26, 2014) (holding it would be insufficient to prevent summary judgment in favor of defendant because mere disagreement over the application of an employer's policy does not establish a genuine dispute of material fact). Consequently, Stovall's claims should be dismissed.

**B. Stovall Cannot Establish a Retaliation Claim.**

To make out a *prima facie* case of retaliation, Stovall must establish: (1) participation in an activity protected by the relevant statute; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse action. *Lyons v. Kay Independent School District*, 964 F.3d 298, 304 (5th Cir. 2020). "Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Id*. Stovall cannot carry his burden.

1. <u>Stovall failed to exhaust his retaliation claim.</u>

Summary judgment is appropriate on Stovall's claim for retaliation because he failed to exhaust his administrative remedies by filing a charge including a retaliation claim. It is black letter law that courts cannot entertain claims brought under Title VII and Chapter 21 of the Texas

17

Labor Code unless the plaintiff has exhausted his administrative remedies by filing a timely charge with the TWC or the EEOC. *Wernert v. City of Dublin*, 557 S.W.3d 868, 873 (Tex. App.--Eastland 2018, no pet.) (citing *Prairie View A & M Univ. v. Chatha,* 381 S.W.3d 500, 502–03 (Tex. 2012). The failure to exhaust administrative remedies is a "mainstay of proper enforcement of Title VII remedies." *Wernert*, 557 S.W.3d at 874 (dismissing a claim under the Texas Commission on Human Rights Act [the "TCHRA"])

The exhaustion requirement is substantive because it is mandatory. *Hinkley v. Envoy Air, Inc.,* 968 F.3d 544, 552 (5th Cir. 2020); *see also Doe v. University of Texas M.D. Anderson Cancer Center*, 653 F. Supp. 3d 359 (S.D. Tex. Jan. 30, 2023) ("Failure to file a charge with the EEOC and exhaust administrative remedies before filing a Title VII action will result in dismissal…[and] the TCHRA also requires a plaintiff to exhaust administrative remedies.").

In this case, while Stovall dual filed a Charge of Discrimination with the TWC and EEOC, he did not include a claim for retaliation. He did not check the box for retaliation, nor did he include any facts to support a claim for retaliation. Because Stovall failed to exhaust his retaliation claim, he cannot maintain such a claim in this litigation and his retaliation claim must be dismissed as a matter of law. *See Prewitt v. Cont'l Auto.*, 927 F. Supp. 2d 435 (W.D. Tex. 2013) ("Because discrimination and retaliation claims are distinct, alleging one and not the other in an … EEOC [] charge does not exhaust a plaintiff's remedies as to the one not included.").

2. <u>Stovall cannot establish a prima facie case of retaliation</u>.

Additionally, Stovall cannot establish a prima facie case because he cannot show he engaged in protected conduct prior to the alleged adverse employment action. It is undisputed, and Stovall does not allege otherwise in his Complaint, that Stovall never complained of any discrimination prior to his separation. He only did so for the first time for purposes of his Charge

of Discrimination. Absent protected conduct, his retaliation claim cannot stand. *See e.g. DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 441 (5th Cir. 2007) (noting that without protected activity, the plaintiff's retaliation claim fails as a matter of law).

    3.  <u>Stovall has no evidence of pretext.</u>

Moreover, Stovall cannot show pretext as noted above. *See, supra,* Argument § A.2. Certainly, he cannot show that his protected activity (which did not occur) was the but-for cause of his termination. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

## VI. CONCLUSION AND PRAYER FOR RELIEF

Raytheon respectfully requests that the Court render summary judgment in its favor. Raytheon also prays for all further relief to which it may be justly entitled.

Respectfully submitted,

**SEYFARTH SHAW LLP**

By: */s/ Stephanie Johnson Manning*
    Esteban Shardonofsky
    Texas Bar No. 24051323
    Stephanie Johnson Manning
    Texas Bar No. 24099422
    700 Milam Street, Suite 1400
    Houston, Texas 77002
    Telephone: (713) 225-2300
    Facsimile: (713) 225-2340
    sshardonofsky@seyfarth.com
    smanning@seyfarth.com

    **ATTORNEYS FOR DEFENDANT**
    **RAYTHEON COMPANY**

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 4th day of March, 2024, I filed the foregoing with the Clerk of the Court using the ECF filing system, which will send notification of such filing to the following:

David Fielding
David Fielding, PC.
Mallick Tower, Suite 1010
101 Summit Avenue
Fort Worth, Texas 76112

                                */s/ Stephanie Johnson Manning*
                                Stephanie Johnson Manning