# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| WILLIAM KIBBEY STOVALL, § § *Plaintiff,* § § v. § § RAYTHEON COMPANY, a/k/a § RAYTHEON TECHNOLOGIES, § § *Defendant.* § | Civil Action No. 4:23-cv-629 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Opposed Motion to Enforce the Settlement Agreement and (In the Alternative) its Motion to Reschedule the January 22, 2025, Trial Date (Dkt. #65). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

On May 19, 2022, Raytheon Company ("Raytheon") fired William Kibbey Stovall ("Stovall") for allegedly violating Raytheon's Sexual Harassment Policy (Dkt. #1 at ¶ 8). Following his dismissal, Stovall filed suit against Raytheon for unlawful termination under the Texas Labor Code and the Age Discrimination in Employment Act of 1967 (Dkt. #1 at ¶ 3). Throughout the discovery process, the parties discussed settlement and even attended mediation on July 12, 2024. (Dkt. #34; Dkt. #65 at ¶ 2). However, the mediation ended in an impasse. As such, settlement discussions continued over email for the next six months (*See* Dkt. #65-1). Throughout this suit, Stovall's wife, an attorney, supported Stovall (collectively, the "Stovalls") during negotiations (Dkt. #65 at ¶ 4).

On December 17, 2024, Raytheon's counsel contacted Plaintiff's counsel to follow up on a conversation from the prior week (*See* Dkt. #65-1 at pp. 6–7). Through it, Raytheon's counsel stated, among other things: "We understand the Stovalls are at [redacted] and Raytheon is at [redacted] (Raytheon made the last move)" (*See* Dkt. #65-1 at p. 6).[1] Later that day, Plaintiff's counsel responded that he "was authorized to settle for [redacted]" (Dkt. #65-1 at p. 6). Then, on the same day, Raytheon's counsel stated: "I appreciate the movement, but we're still pretty far apart. Do you realistically think you can get them under [redacted], like if Raytheon does a 'last best and final' at [redacted]—will they take that?" (Dkt. #65-1 at p. 5). Stovall's counsel responded that "[t]he closer you can get to [redacted] the better chance we have of settling this case" (Dkt. #65-1 at p. 5). On December 18, 2024, Raytheon's counsel replied:

> Raytheon will go to [redacted] but needs to see something other than another matching drop to signal to them that the Stovalls are serious about getting this done. I know you're signaling [redacted] but I'm just not sure that's going to work for Raytheon. Raytheon is getting tired/annoyed/frustrated with the matching drops and would like the Stovalls to get serious about this, and ideally before the end of the week (at least as to money and terms), i.e., before [Raytheon's holiday shutdown]. Please do what you can to get a decent drop from the Stovalls and I'll see what more (if any) I can get from Raytheon.

(Dkt. #65-1 at p. 5).

Later that afternoon, Stovall's counsel responded: "My client goes to [redacted] and feels that Raytheon should be willing to pay [redacted] [t]o settle this case" (Dkt. #65-1 at p. 4). Raytheon's counsel answered with the following: "Will you confirm that the Stovalls will take [redacted] [i]f I can get Raytheon to that number. I do not want there to be any miscommunication between the parties if I ask Raytheon to get additional authority. Please confirm" (Dkt. #65-1 at

---

[1] In the Motion, Raytheon redacted the offered settlement amounts that the parties discussed in their email chain (*See* Dkt. #65-1). Accordingly, the Court will designate the redactions as "[redacted]" when quoting from these emails.

2

p. 4). Stovall's counsel answered "[y]es" (Dkt. #65-1 at p. 3). Raytheon's counsel confirmed Stovall's acceptance of the offer by e-mailing a settlement agreement (Dkt. #65-1 at p. 3).

On December 31, 2024, Raytheon's attorney emailed Stovall's attorney inquiring as to "when [they] can expect a signed copy of the settlement agreement" (Dkt. #65-1 at p. 2). Plaintiff's attorney responded two days later explaining "[m]y clients are balking at the settlement agreement. They say that they had no idea that they would owe taxes on any of the money . . . I need to know what action you would take if they want to cancel the settlement" (Dkt. #65-1 at p. 2). Stovall's counsel stated that his client was balking because he did not realize he would owe taxes on any of the money (Dkt. #65-1 at p. 2).

On January 3, 2025, Raytheon filed the Motion (Dkt. #65). The parties' counsel appeared before the Court on January 6, 2025, expecting a final pretrial conference. However, the proceeding shifted to the settlement agreement. The Court stated it would reset trial for another date and allow the parties to fully brief the Motion. Accordingly, Stovall filed his Response on January 29, 2025 (Dkt. #66) and Raytheon filed its Reply on February 14, 2025 (Dkt. #69). Then, on February 21, 2025, Stovall filed his Sur-Reply (Dkt. #70). The Motion is ripe for adjudication.

## LEGAL STANDARD

A court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties. *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994). Once a party authorizes settlement, "that party remains bound by the terms of the agreement" and cannot "change[] his mind when presented with the settlement documents." *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981). A settlement need not be reduced to writing in order to be enforceable. *Quesada v. Napolitano*, 701 F.3d 1080, 1084 n.10 (5th Cir. 2012). "An

3

attorney of record is presumed to have authority to compromise and settle litigation of his client . . . ." *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984) (quoting *St. Armand v. Marriott Hotel, Inc.*, 430 F. Supp. 488, 490 (E.D. La. 1977)). Under federal law, a settlement agreement is a contract. *See Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). A contract requires an offer, acceptance, consideration, and a meeting of the minds on all essential terms. *See In re Deepwater Horizon*, 786 F.3d 344, 355–59 (5th Cir. 2015). "Acceptance is possible through any manifestation of assent that occurs in any reasonable manner." *Chen v. Highland Cap. Mgmt., L.P.*, No. 3:10-CV-1039-D, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012) (citing RESTATEMENT (SECOND) OF CONTRACTS § 50 cmt. a (A.L.I. 1981)). "A meeting of the minds on all essential terms of a settlement agreement is generally present where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims." *Lee v. Gulf Coast Blood Ctr.*, 2020 WL 4700896, at *3 (S.D. Tex. Aug. 13, 2020) (citation modified); *see also In re Deepwater Horizon*, 786 F.3d at 357 n.26. The party attacking the settlement bears the burden to show that the contract is tainted with invalidity. *Harmon v. Journal Pub. Co.*, 476 F. App'x 756, 758 (5th Cir. 2012).

## ANALYSIS

The issue before the Court is whether there is an enforceable settlement agreement between the parties. There is. Raytheon offered to settle this suit, Plaintiff accepted the settlement, the parties provided consideration, and they had a meeting of the minds on the essential terms.

### I.     The Offer

Raytheon made a valid offer to Plaintiff. "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Lozano v. Metro. Transit Auth. of Harris Cnty.*, No. H-14-

4

1297, 2016 WL 3906295, at *3 (S.D. Tex. July 19, 2016) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 24 (A.L.I. 1981)). Beginning with the emails on December 19, 2024, Raytheon made an offer to settle with Plaintiff by stating: "Will you confirm that the Stovalls will take [redacted] [i]f I can get Raytheon to that number. I do not want there to be any miscommunication between the parties if I ask Raytheon to get additional authority. Please confirm" (Dkt. #65-1 at p. 4). Indeed, the following emails between the parties indicate this was an offer. Stovall's counsel responded "[y]es" (Dkt. #65-1 at p. 3). This acceptance prompted Raytheon to send a draft settlement agreement (Dkt. #65-1 at p. 3; Dkt. #65-3 at pp. 2–7). In addition to these emails, statements by Stovall's counsel indicate this was an offer. On January 6, 2025, the Court held a final pre-trial conference (Dkt. #68 at pp. 1, 3). At this hearing, Stovall's counsel stated: "I was authorized to settle this case for $300,000. The other side sent me an email asking if they offered three hundred, if we would accept it. I emailed them back and said yes, and then they congratulated me on the settlement. I then congratulated [the Stovalls] on the settlement" (Dkt. #68 at p. 3). This statement indicates that Raytheon made an offer to the Stovalls. Further, Stovall's Response states that "[i]n this case, there was an offer and an acceptance of a settlement amount of $300,000 to be paid on settlement" (Dkt. #66 at ¶ 3). Thus, the Court is convinced that Raytheon made an offer to the Stovalls. *See Lozano*, 2016 WL 3906295, at *3.

II.    **The Acceptance**

Stovall accepted the offer. "Acceptance is possible through any manifestation of assent that occurs in any reasonable manner." *Chen*, 2012 WL 5935602, at *2 (citing RESTATEMENT (SECOND) OF CONTRACTS § 50 cmt. a (A.L.I. 1981)). Here, as noted above, Stovall accepted Raytheon's offer through his counsel's email to Raytheon (Dkt. #65-1 at p. 3 ("Yes.")). Stovall's counsel confirmed as much at the pretrial conference (Dkt. #68 at p. 3 ("I emailed [Raytheon's

5

counsel] back and said yes, and then they congratulated me on the settlement. I then congratulated [the Stovalls] on the settlement"); Dkt. #68 at p. 4 ("[The Stovalls] instructed me that they were revoking their acceptance of the agreement")). And again, Stovall asserts that he accepted the offer in his Response (Dkt. #66 at ¶ 3 ("In this case, there was an offer and an acceptance of settlement amount of $300,000 to be paid upon settlement.")). Accordingly, the Court finds that Stovall accepted Raytheon's offer.

### III.   Consideration

There was consideration for the settlement agreement. Raytheon agreed to pay Stovall a settlement amount and, in exchange, Stovall agreed to release his claims and settle this suit with Raytheon (*See* Dkt. #65-1). *Blakeney v. Lomas Info. Sys., Inc.*, 879 F. Supp. 645, 648–49 (N.D. Tex. 1995) (noting that release of claims for settlement of claims is valid consideration).

### IV.   A Meeting of the Minds on the Essential Terms

There was a meeting of the minds on all essential terms of the settlement agreement. "A meeting of the minds on all essential terms of a settlement agreement is generally present where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims." *Lee*, 2020 WL 4700896, at *3 (citation modified); *see also In re Deepwater Horizon*, 786 F.3d at 357 n.26. The dispute in this case centers around this element. Stovall argues that an agreement to settle the case was never formed because, although there was "an offer and an acceptance of a settlement amount of $300,000 to be paid upon settlement," there was also an offer of multiple legal clauses that the Stovalls never agreed to (*See* Dkt. #66 at ¶ 5). Stovall also argues that the alleged agreement does not comply with Rule 11 of the Texas Rules of Civil Procedure. [[*See* cite re relevant portion of Rule 11 ("explanatory parenthetical")]]. Stovall's arguments ring hollow.

6

The parties agreed to the material terms of the settlement agreement. In the context of a settlement agreement, the material terms are "monetary amount of the settlement payment and the fact that plaintiff[] will release specific claims." *Lee*, 2020 WL 4700896, at *3 (citation modified); *see also In re Deepwater Horizon*, 786 F.3d at 357 n.26. Here, Stovall's Response states that "there was an offer and an acceptance of a settlement amount of $300,000 to be paid upon settlement" (Dkt. #66 at ¶ 5). Accordingly, the Court finds that this material term (i.e., the monetary amount of the settlement) is satisfied; the parties agreed to $300,000. There was also a meeting of the minds on what claims Stovall would release—his whole lawsuit. Returning to the emails, the correspondence indicates that the parties' counsel only ever discussed dismissing the entire suit (*See* Dkt. #65-1 at pp. 2–7). Further, Stovall does not aver that the settlement was only supposed to cover certain claims (*See* Dkt. #66; Dkt. #70). Rather, Stovall takes umbrage with the settlement and claims it is invalid because he did not realize he would have to pay taxes on it (*See* Dkt. #65-1 at p. 2; Dkt. #66 at ¶ 5; Dkt. #70 at ¶ 8). This argument falls flat because "courts routinely enforce settlement agreements even where the precise wording of a release has not been finalized." *In re Deepwater Horizon*, 786 F.3d at 357. Thus, the Court finds that this material term (i.e., the claims Stovall would release) is satisfied; the parties agreed that Stovall would settle his entire suit. Thus, the Court finds that the parties had a meeting of the minds on the material terms.

Stovall's argument regarding Rule 11 is meritless. Federal law, *not* Texas law, applies here because this case is before the Court on federal question jurisdiction. While Stovall's Complaint references a Texas law claim (Dkt. #1 at ¶ 15), his Complaint unequivocally states that this "Court has jurisdiction over this action pursuant to 29 U.S.C. § 623 . . . and 28 U.S.C. § 1331" (Dkt. #1 at ¶ 5). And, even if Texas law applied, the offer and acceptance of the material terms contained in

the emails between the parties—the settlement amount and that the entire case would be settled—would satisfy Rule 11 (Dkt. #65-1 at p. 4). *See Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health and Hum. Servs.*, 540 S.W.3d 553, 561 (Tex. 2018) (noting that Texas courts have held that a series of emails established an agreement that satisfied Rule 11). Accordingly, Stovall's argument is unpersuasive. The Court finds that the parties' settlement agreement is enforceable.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Opposed Motion to Enforce the Settlement Agreement and (In the Alternative) its Motion to Reschedule the January 22, 2025, Trial Date (Dkt. #65) is hereby **GRANTED in part** and **DENIED in part**. The Court will enforce the settlement agreement and **DENY as moot** Defendant's Motion to Reschedule the January 22, 2025, Trial Date.

It is further **ORDERED** that within 30 days all parties shall submit to the Court all papers necessary for the closing of this case and its removal from the docket. If the Court does not receive such papers by the deadline, the Court may order counsel to appear at a hearing for the purpose of determining which party is responsible for the delay. Thereafter, the Court may enter such orders as are just and necessary to ensure prompt resolution of this case.

**IT IS SO ORDERED.**
**SIGNED** this 11th day of July, 2025.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE